UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NACHE AFRIKA,

                    Petitioner,

    -vs-

JAMES CONWAY, Superintendent

                 Respondent.

_____

**DECISION AND ORDER**

**No. 06-CV-0280T**

## I.   Introduction

*Pro se* petitioner Nache Afrika ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 12, 2002, in New York State, Supreme Court, Monroe County, convicting him, after a jury trial, of Robbery in the First Degree (N.Y. Penal Law ("Penal Law") § 160.15 [4]) and Sodomy in the First Degree (Penal Law § 130.50 [1]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

### A.    The People's Application for the Blood Exemplar

Petitioner's conviction arises from the robbery of a VIX Pharmacy in Henrietta, New York and the forcible sodomy of a male employee, which occurred on July 28, 1998. Petitioner wore a mask

-1-

throughout the incident, but his identity was established by a comparison of the DNA extracted from sperm factions left on and in the victim's anal area and a sample of Petitioner's blood obtained pursuant to an order entered December 6, 2001 by the Supreme Court, Monroe County (Hon. Kenneth R. Fisher). See Resp't App. J at 147-148. Petitioner challenges the validity of that blood draw order in the instant proceeding. The relevant facts and events related to that order are explicated below:

Shortly after the VIX robbery and sodomy, a long-time acquaintance of Petitioner reported to the police that Petitioner had sexually assaulted her in his apartment. The grand jury did not indict, but physical evidence, consisting of the woman's semen-stained panties was retained. A forensic serologist matched the semen, which the woman attributed to Petitioner, to that recovered in connection with the instant case and concluded that the odds of such a match occurring at random with another African-American male were 1:5920. Because the official records of the no-billed case were sealed, the facts were as recalled by the prosecutor and the exact dates are not part of the record before this Court. See Resp't App. J at 120-123, 132-134.

On October 27, 1998, a masked intruder robbed a department store in Cheektowaga, New York and sexually assaulted a woman employee under similar circumstances to those in the instant case. A sperm faction was recovered by the perpetrator. Local police

were informed that the perpetrator was Petitioner, and the Erie County District Attorney's Office sought authorization to obtain a sample of appellant's blood pursuant to <u>Matter of Abe A.</u>, 56 N.Y.2d 288 (1982). That order was granted on February 15, 2000. A DNA match was established, and the Erie County case proceeded on that basis. <u>See</u> Resp't App. J at 122-123. That conviction was eventually reversed. <u>See</u> Resp't App. K at 3.

On February 18, 2000, while the Henrietta and Cheektowaga cases were pending, Petitioner was convicted and sentenced for an unrelated violent felony in Monroe County. That conviction was subsequently affirmed. <u>People v. Afrika</u>, 291 A.D.2d 880 (4th Dep't 2002). On August 13, 2001, the State Department of Correctional Facilities (DOCS) extracted a blood sample pursuant to section 995-c of the Executive Law so that Petitioner's DNA profile could be included in the State databank. On September 21, 2001 the director of the State Police Forensic Investigation Center notified the District Attorney and other county officials of a DNA match between the anal swab sperm faction retained in the instant case and that of Petitioner. <u>See</u> Resp't App. J at 123-125, 135.

On October 23, 2001, the trial court in the instant case determined that the Erie County blood draw order had been wrongly granted and suppressed the results. <u>People v. Afrika</u>, 189 Misc.2d 812 (2001). Accordingly, a new blood draw order, the one at issue in the instant case, was sought by the People. The defense opposed

the People's motion.  The People's order was granted.  <u>See</u> Resp't App. J at 147-148.

Subsequently, the defense moved to suppress the results of the People's blood draw order.  The trial court denied the defense's motion, finding that the requisite probable cause was present, there had been a clear indication that relevant material evidence would be acquired, and that the proposed method for extracting Petitioner's blood was safe and reliable.  Additionally, the trial court found no merit to Petitioner's claim that the application was in any way the fruit of the suppressed results of the Erie County blood draw order.  <u>See</u> Resp't App. J at 114-115.

### B.    The Evidence at Trial

The VIX Pharmacy in Southtown Plaza in Henrietta, New York, closed at about 10:00 p.m. on the night of June 28, 1998.  John Ranney ("Ranney"), George Schnell ("Schnell") and Patricia Beggs ("Beggs") were the last employees to leave, having put the day's deposits inside a "drop safe" in the front of the store.  About $8,000 in cash and currency, needed for the next day's business, was secured in a separate safe in the office.  Trial Trans. [T.T.] 6-10, 40-42, 47-49.

Ranney set the alarm, and the three went out into the parking lot.  A chirping sound from the alarm, which was supposed to eventually stop, persisted.  The two men went back inside while Beggs waited outside for her ride home.  Ranney called the security

company to report that he would be resetting the alarm. As soon as Ranney hung up, he took a step toward the alarm controls. As he did so, Petitioner appeared and came at him from one of the store aisles, brandishing a handgun. As Schnell approached, Petitioner turned the weapon on him. Petitioner wore a ski-mask over his face, but Ranney and Schnell observed that he was a tall, solidly-built, African-American man. T.T. 11-14, 44-47. Petitioner asked where Beggs was. When he was told that she had left, Petitioner forced both men into the office, ordering Schnell to lie face down, and tied Schnell's hands and feet with duct tape. He then ordered Ranney to open the safe, which Ranney did. Binding Ranney in the same way as Schnell, Petitioner went into the safe and emptied the contents. Schnell could hear the money being rifled as it was being put into a shopping cart. Petitioner cut the tape around Ranney's feet and ordered him to open the "drop safe" as well, but Ranney did not have a key. Petitioner proceeded to try some keys on his own, after which he placed some money in the shopping cart. Petitioner also took the men's wallets, each of which contained cash, credit cards and a driver's license. Holding the gun to Schnell's head, Petitioner warned him not to say anything because he knew where Schnell lived. T.T. 16-22, 47-49, 52.

Petitioner, pushing the shopping cart against Ranney's back, forced Ranney back to an area near the receiving dock, where he opened Ranney's pants and pulled them, and Ranney's underpants,

down.  Ranney then felt Petitioner's penis against his buttocks.
Petitioner forced Ranney onto a mat on the floor, face down, and
placed "something" on his buttocks that felt "like a jelly."
Petitioner then inserted his penis in Ranney's anus.  After a few
minutes, Petitioner withdrew, "wiped [Ranney] off," and proceed to
ask whether Ranney wanted "the full treatment."  Ranney said
nothing.  Petitioner then left through the back door, telling
Ranney that he would be back.  T.T. 23-28.

Schnell, in the meantime, managed to loosen the tape around
his wrists and feet and pressed the silent alarm.  He also called
911.  A few minutes later, police arrived and an ambulance was
summoned for Ranney.  T.T. 29, 50-51.  An evidence technician
employed by the Monroe County Sheriff's Office also responded, and
in the rear of the store, found an empty cart, a discarded tissue,
and a jar of petroleum jelly in a trash can near the mat on the
floor.  He also noted that the safe in the office was open and
empty, although a five-dollar bill and a roll of coins, as well as
some lottery tickets and pieces of duct tape, were scattered on the
floor.  T.T. 59-64, 72.

Ranney was taken to Strong Memorial where Dr. Robert Greenwald
examined Ranney and noted a painful contusion around the anus.  A
rape kit was performed on Ranney in which swabs of dried secretions
from around the rectal area and inside the anus were obtained and
used to prepare slides for later examination.  A sample of Ranney's

blood was also taken.  T.T. 101-110.  The rape kit was examined by a forensic biologist from Monroe County who found the presence of sperm cells on the dried secretion and anal slides.  All the materials were then placed into a bag and sent to the State Police crime lab in Albany for further analysis.  T.T. 145-155, 163. There, an analysis was performed by a forensic scientist.  A DNA "profile" was developed from the biologically distinctive sperm cells on the anal and rectal swabs.  T.T. 197-209, 218-220, 238. A blood sample, which had been taken from Petitioner a few days earlier, was also examined and a DNA profile was developed from it. T.T. 180-182, 190-93, 221-224.  That blood sample matched that of the sperm cells at 13 distinct loci.  The chance of that same genetic profile occurring in another African-American male was one in 866,500,000,000,000,000.  T.T. 236-240.

### C.    Conviction and Sentence

At the close of the trial, Petitioner was found guilty as charged and subsequently sentenced, as a second felony offender, to concurrent terms of twenty-five years imprisonment.  T.T. 414; Sentencing Mins. 13.

### D.    Collateral Relief

On or about March 13, 2003, Petitioner filed a motion to vacate the judgment of conviction, pursuant to N.Y. Crim. Proc. L. ("CPL") § 440.10, on the following grounds: (1) ineffective assistance of trial counsel; (2) that the trial court erred in

allowing photographic evidence of the victim depicting his injuries to be received in evidence and displayed to the jury. <u>See</u> Resp't App. A. That motion was denied pursuant to CPL § 440.10(2)(b) because the issues Petitioner raised were matters of record, which could be advanced on direct appeal. <u>See</u> Resp't App. E. Leave to appeal was denied. <u>See</u> Resp't App. H.

In 2005, Petitioner moved to vacate his judgment of conviction and to set aside his sentence pursuant to CPL § 440.10 and CPL § 440.20.[1] Petitioner moved to vacate his judgment of conviction on the basis of an alleged <u>Sandoval</u> violation. The Monroe County Supreme Court rejected that issue pursuant to CPL § 440.10(2)(c) because the issue was a matter of record that could have been raised on direct appeal, but unjustifiably was not. With respect to that issue, leave to appeal was denied. <u>See</u> Resp't Apps. U, W, X, Y, Y-2, Y-4, Y-5, Z-2.

### E. Petitioner's Direct Appeal

Petitioner appealed his judgment of conviction, which was unanimously affirmed by the Appellate Division, Fourth Department ("Fourth Department") on December 30, 2004. <u>People v. Afrika</u>, 13

---

[1]       Petitioner's motion to set aside the sentence was granted, and Petitioner was apparently re-sentenced in May of 2006, although the minutes from that re-sentencing proceeding are not included in the record before this Court. <u>See</u> Resp't Apps. Y-5, U-6; T.V. at 2. To the extent Petitioner does not challenge his sentence and the terms of his sentencing are not implicated in or by any of his habeas claims, the Court resolves Petitioner's habeas corpus petition without those minutes.

A.D.3d 1218 (4th Dep't 2004) (<u>See</u> Resp't App. P); <u>lv. denied</u>, 4 N.Y.3d 827 (2005) (<u>See</u> Resp't App. T).

## F.    The Habeas Corpus Petition

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) a <u>Batson</u> violation; (2) the verdict was against the weight of the evidence and the evidence was legally insufficient to support the robbery conviction; (3) the state court erred in granting the People's request for a blood draw order; (4) various deficiencies in the People's motion for a blood draw order; (5) defective reasonable doubt jury instructions (6) violation of right to indictment by grand jury; (7) the trial court erred in failing to excuse a prospective juror "for cause"; (8) cumulative effect of constitutional errors denied him a fair trial; (9) the trial court abused its discretion in admitting photographic evidence of the victim's injuries; (10) ineffective assistance of trial counsel; and (11) a <u>Sandoval</u> claim.  <u>See</u> Pet. Attachs. (Dkt. #1); Traverse [T.V.] at 6-28 (Dkt. # 16).

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state

court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## B.  Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838,

843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

### C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. See Harris, 489 U.S. at 262 (citing cases). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. See id. It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

-12-

**IV.  Petitioner's Claims**

**1.   Legally Insufficient Evidence and Verdict was Against the Weight of the Evidence**

Petitioner claims, as he did on direct appeal, that the evidence was legally insufficient to support his robbery conviction because there was no testimony that established that the store was permanently deprived of money, and that the evidence was against the weight of the evidence.[2]  See Pet. at 11, Point Two;  T.V. at 11-13.   The Fourth Department rejected Petitioner's legal insufficiency claim on procedural grounds for failure to properly preserve the issue for appellate review.  See Afrika, 13 A.D.3d at 1221.  Consequently, this claim is procedurally barred from review by an adequate and independent state law ground.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, whether substantive or procedural, that is independent of the federal question and adequate to support the

---

[2]

Petitioner's claim that the verdict was against the weight of the evidence is dismissed as not cognizable.  Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review.  See e.g., Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).  A claim that a verdict was against the weight of the evidence derives from CPL § 470.15(5) which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."  CPL § 470.15(5).  Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles.  People v. Bleakley, 69 N.Y.2d 490, 495 (1987).  Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review.  See 28 U.S.C. § 2254(a);  Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

judgment.  See Coleman, 501 U.S. at 729.  Here, the state court relied on New York's preservation rule (codified at CPL § 470.05(2)) to deny Petitioner's claim because the issue had not been properly preserved for appellate review.  The Second Circuit has determined that CPL § 470.05(2) is an independent and adequate state procedural ground.  See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999);  Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).  The Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of his claim.

This Court may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice.  See Coleman, 501 U.S. at 750.  In his Traverse, Petitioner alleges ineffective assistance of trial counsel as cause for the default.  See T.V. at 12.  A claim of ineffective assistance of counsel may establish cause for a procedural default.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000);  McCleskey v. Zant, 499 U.S. 467, 494 (1991);  United States v. Frady, 456 U.S. 152, 168 (1982).  However, a claim of ineffective assistance of counsel may not be used, as here, to establish cause for the procedural default when it has not been

raised as an independent claim in the state courts.[3]  Murray v. Carrier, 477 U.S. 478, 488-90 (1986);  see e.g., Ross v. Burge, 03 Civ. 3867, 2008 U.S. Dist. LEXIS 20141, *20-22 (S.D.N.Y. March 21, 2008) (finding Petitioner's ineffective assistance of trial counsel claim cannot serve as cause for a procedural default because it was never presented to the state court as an independent claim).  Thus, Petitioner is unable to make a successful showing of cause and prejudice to overcome the default.  Additionally, he is unable to successfully avail himself of the miscarriage of justice exception to the extent his conclusory assertion[4] that he is actually innocent is unsupported by "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy accounts, or other critical physical evidence -- that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).  Thus, Petitioner's claim is dismissed as procedurally defaulted.

## 2.  **Sandoval** Claim

Petitioner argues, as he did in his second CPL § 440.10 motion, that the trial court's Sandoval ruling, which permitted cross-examination on a 2001 conviction in Erie County that was

---

[3]

Petitioner raised an ineffective assistance of trial counsel claim in his first CPL § 440.10 motion; however, that motion was brought on the grounds that counsel failed to object to the admission at trial of DNA comparison evidence and that counsel failed to properly challenge the admission of photographic evidence.

[4]

He contends that he "declare[s] actual innocence and insufficiency . . . and particularly that no pr[oof] exist[s] that he committed either of the two count indictment." T.V. at 12.

subsequently reversed, violated both his state and federal constitutional rights. See Pet. at 13, Point One. The Monroe County Supreme Court denied Petitioner's claim on procedural grounds, pursuant to CPL § 440.10(2)(c). See Resp't App. Y-5 at 4. The state court's reliance on an adequate and independent state law ground to deny the claim renders this claim procedurally barred from review by this Court.

As discussed above, a federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the Monroe County Supreme Court rejected Petitioner's claim pursuant to CPL § 440.10(2)(c), finding that "on appeal, defendant could have raised his claim[] that it was error to allow inquiry into the Erie County conviction. There are sufficient facts on the record to have permitted adequate review on appeal. Also, importantly, the Fourth Department's decision reversing the Erie County conviction was rendered July 9, 2004, and the decision from the appeal of the Monroe County conviction was rendered December 30, 2004, thus permitting defendant an opportunity to raise the issue on direct appeal." See Resp't App. Y-5 at 4. The Second Circuit has recognized CPL § 440.10(2)(c) as an adequate and independent state ground sufficient to preclude federal habeas review of a state-court

defendant's claims.  See e.g., Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003); Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997); Aparicio, 269 F.3d at 91 (2d Cir. 1991).  Thus, the state court's reliance on CPL § 440.10(2)(c) to deny Petitioner's claim bars this Court's review of it.  Petitioner does not allege cause and prejudice to overcome the procedural bar, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice.  Accordingly, the claim is dismissed as procedurally defaulted.

In any event, even if Petitioner's claim was not procedurally barred, it is not cognizable by this Court on federal habeas review.  It is well-established that a Sandoval decision by a trial court is not reviewable in a habeas corpus petition where, as here, Petitioner did not take the stand to testify in his criminal trial.  See, e.g., Celleri v. Marshall, No. 07-CV-4114, 2009 U.S. Dist. LEXIS 38321 (E.D.N.Y. May 6, 2009); Ciochenda v. Artus, No. 06 Civ. 5057, 2009 U.S. Dist. LEXIS 35589 (S.D.N.Y. Apr. 9, 2009) (citing Luce v. United States, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.")).  Thus, Petitioner's claim provides no basis for habeas review and is dismissed.

## 3. Trial Court Erred in Granting the People's Application for a Blood Draw Order

Petitioner contends, as he did on direct appeal, that the trial court erred in granting the People's application for a blood

draw order.[5]  See Pet. at 11, Ground Three; T.V. at 6-8, 15-17.

Specifically, Petitioner states that the "State court erred in

granting State probable cause application relying solely upon

previously suppressed information and relied upon unsubstantiated

unreliable hearsay that was provided in violation of CPL § 160.50."

Pet. at 11.

To the extent Petitioner has framed this claim as a violation

of state law, such a claim is not cognizable by this Court on

habeas review.  Federal habeas relief may not be granted based on

an error of state law, absent some federal violation accompanying

the state law error.  See Estelle v. McGuire, 502 U.S. 62, 67-68

(1991) ("[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions.");

Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas

corpus relief does not lie for errors of state law.").  Although,

in his Traverse, Petitioner refers to this claim as a

"constitutional question" and faults the Respondent for failing to

respond to same, his allegations turn primarily on the state

---

[5]
    Additionally, he asserts, as a stand-alone claim, as he did on direct
appeal, numerous contentions concerning the propriety of the order authorizing
the People to obtain a blood sample from him.  See Pet. at 11-12, Ground One.
This claim, which the Fourth Department rejected on procedural grounds, is
procedurally barred from review by this Court.  The Fourth Department determined
that "[t]he remaining contentions of the defendant in his pro se supplemental
brief concerning the propriety of the order authorizing the People to obtain a
blood sample from him are not preserved for our review (see 470.05 [2]), and in
any event are without merit."  Afrika, 13 A.D.3d at 1220.  Petitioner makes no
showing of the requisite cause and prejudice to overcome the procedural default,
nor has he demonstrated that this Court's failure to review the claim will result
in a miscarriage of justice.  Accordingly, Petitioner's claim is dismissed as
procedurally defaulted.

court's interpretation and application of CPL § 160.50 to the facts of his case. Thus, even if the trial court's ruling violated CPL § 160.50, his claim would still not warrant federal habeas review. See e.g., Reeb v. Woods, No. 07-CV-0409(VEB), 2010 U.S. Dist. LEXIS 116640, at *13-14 (W.D.N.Y. Nov. 2, 2010) ("[I]t does not appear that Reeb has alleged any violation of federal constitutional law, let alone state law. At most, Reeb seems to be alleging a violation of CPL § 160.50; however, that statute does not implicate a defendant's federal or state constitutional rights.") (citing cases). To this extent, Petitioner's claim that the trial court erred in granting the People's motion for a blood draw order is not cognizable by this Court.

Moreover, to the extent, if any, that Petitioner is arguing that the trial court's order compelling him to give a sample of his blood violated his Fourth Amendment right to be free from unlawful searches and seizures, this argument also fails. This issue was adjudicated on the merits in state court and therefore does not qualify for federal habeas review. In Stone v. Powell,[6] the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth-Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at

_____

[6] 428 U.S. 465, 482 (1976)

his trial." The Second Circuit has interpreted the "opportunity" for litigation provided by the State to mean "a statutory mechanism for suppression of evidence tainted by an unlawful search or seizure." Gates v. Henderson, 568 F.2d 830, 837 (2d Cir. 1977) (en banc); see, e.g., Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Absent a showing that "the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations" or that the petitioner was precluded from using the otherwise available procedure because of an "unconscionable breakdown" in the underlying process, Petitioner cannot obtain habeas review. Capellan, 975 F.2d at 70.

Petitioner does not allege that New York failed to provide an opportunity to litigate this Fourth-Amendment claim; indeed New York provides the requisite statutory mechanism through section 710 of the Criminal Procedure Law. See Gates, 568 F.2d at 837. Petitioner also does not and can not assert an "unconscionable breakdown" in the underlying state process. Here, the trial court conducted a hearing on December 6, 2001 to hear arguments on the People's motion for a blood drawer order. See Motion Mins. [M.M.] of 12/6/01. Defense counsel went to great lengths to challenge the People's request, submitting motion papers, and voicing her objections at this hearing. At the close of this hearing, the trial court granted the People's motion. See Resp't App. J; M.M. at 22. Subsequently, defense counsel moved to suppress the

evidence obtained therefrom, reiterating the same arguments she previously made in opposing the People's blood draw application. See Resp't App. J. Following a hearing on this issue, the trial court denied Petitioner's motion to suppress the evidence obtained from the blood draw order, finding that the requisite probable cause was present, the People established a clear indication that relevant material evidence would be maintained, and that the proposed method used to obtain the evidence was safe and reliable. See M.M. of 04/25/01; Resp't App. J. Petitioner also challenged the trial court's decision to authorize the taking of the blood sample from him in his appellate and supplemental pro se briefs to the Fourth Department. The trial court's decision regarding the issuance of the blood draw order and its subsequent decision denying suppression of the evidence obtained therefrom, and the Fourth Department's review of the issue constitutes sufficient process for, and a full and fair opportunity to litigate this claim. Thus, to the extent he argues his Fourth Amendment rights were violated by the trial court's order compelling him to give a blood sample, such a contention is not cognizable on federal habeas review.

Accordingly, Petitioner's claim provides no basis for habeas relief and is dismissed.

## 4. **Batson** Claim

Petitioner asserts, as he did on direct appeal, that, during jury selection, the prosecutor "exercised peremptory strikes in a discriminatory fashion" with respect to two prospective African-American jurors, Juror # 13 (Moorehead) and Juror # 16 (Rivera).[7] See Pet. at 11, Point One; Pet. at 12, Point Five; T.V. at 9-11. The Fourth Department rejected this claim on the merits, finding, in pertinent part, "that defendant failed to meet his ultimate burden of establishing that the prosecutor's race-neutral reasons were a pretext for intentional discrimination." Afrika, 13 A.D.3d at 1221 (internal citations omitted). As discussed below, this claim is meritless.

---

[7]

As a stand-alone claim, Petitioner also alleges that the trial court erred in denying his challenge "for cause" with respect to another prospective juror, Carl Hofstetter. See Pet. at 12, Point Three. According to Petitioner, the trial court's ruling violated CPL § 270.20, which governs voir dire proceedings in New York. This claim, which derives from state law, is dismissed because it is not cognizable on federal habeas review. A violation of a state statute is not a cognizable habeas claim unless the violation implicates constitutional concerns. See 28 U.S.C. § 2254(a). Petitioner's claim does not.

Petitioner contends that the trial court erred in denying his challenge "for cause" with respect to Hofstetter insomuch as Hofstetter was not equivocal enough in assuring the trial court that there was nothing in his background, including having a nephew that was a police officer in Florida and a close friend whose daughter had been the victim of date rape, that would cause him to "favor one side or the other." Jury Selection Mins. [J.S.] 20. When the trial court specifically asked Hofstetter this question, he responded, "I don't think so." J.S. 20. The record reflects that the trial court subsequently asked Hofstetter the same question again, to which he again responded, "[he] d[idn't] think so." J.S. 54. At that point, the trial court specifically asked Hofstetter what "I don't think so" meant, to which Hofstetter responded, "I would be okay with that." J.S. 54. There is nothing in the record that raised doubt about Hofstetter's ability to be unfair, thereby warranting his excusal. See People v. Chambers, 97 N.Y.2d 417 (2002) (holding that the use of the word "think" does not automatically render a juror's statement equivocal). Thus, Petitioner's claim that the trial court erred in denying his challenge "for cause" with respect to Hofstetter presents no error of state law, let alone an error of federal constitutional dimension. This claim is therefore dismissed.

In Batson v. Kentucky, the Supreme Court held that the Equal Protection Clause of the Constitution prohibits a prosecutor from excluding prospective jurors "solely on account of their race or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant." 476 U.S. 79, 89 (1986). There are three steps to a Batson inquiry. Initially, the opponent of a peremptory challenge must make out a prima facia case of discrimination. Purkett v. Elem, 514 U.S. 765, 767 (1995). The burden of production then shifts to the proponent of the strike to come forward with a race-neutral explanation. Id. "The second step of this process does not demand an explanation that is persuasive, or even plausible." Id. at 767-68. If a race-neutral explanation is provided, the trial court must then decide whether the opponent challenging the strike has proved purposeful discrimination. Id. at 767. That determination is a finding of fact entitled to deference by the reviewing court. Hernandez v. New York, 500 U.S. 352, 364-66 (1991); see Purkett, 514 U.S. at 769 ("[I]n habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are 'not fairly supported by the record.'") (citation omitted); United States v. Douglas, 525 F.3d 225, 239 (2d Cir. 2008) ("Since a finding as to whether there was intentional discrimination is a finding of fact, and the trial court findings in this context

largely will turn on evaluation of credibility, the trial court's finding as to whether the prosecutor's reason was race-neutral may be overturned only if that finding is clearly erroneous.") (citation omitted); see generally 28 U.S.C. §§ 2254(d)(2), (e)(1).

Both Juror # 13 (Moorehead) and Juror # 16 (Rivera) were among the second panel of jurors questioned.

During jury selection, Juror # 13, when asked by the prosecutor to tell them about himself, stated: "I was working at one point and I work in between jobs like temp. services, nothing real permanent. But I'm going back to school, as a matter of fact, next Monday." J.S. 121. Juror # 13 went on to explain that he was "undecided right now" as to what areas he anticipated studying. J.S. 121.

The prosecutor exercised a peremptory strike to Juror # 13, and defense counsel challenged "Mr. Moorehead as the lone African-American male in the entire jury pool, much less this panel." Defense counsel then stated, "[h]e absolutely had nothing to say that would in any way indicate that he couldn't be fair or that he had a prejudice against the State or in any way had any kind of inflammatory background that would affect the outcome." Defense counsel went on: "[i]n fact, [Mr. Moorehead] was very direct in what he did have to say and certainly didn't appear biased in one direction or the other." J.S. 139-140. Before the prosecutor could explain her race-neutral reason, the trial court interjected,

and stated, "[w]ithout finding that a prima facie case has been established by this and assuming that to be the case, without deciding on it, I'd put the prosecutor to stating --." J.S. 140. The prosecutor responded as follows: "[m]y reasons, yes, your Honor. Mr. Moorehouse said that he was unemployed and is going to school, doesn't have an education, and had -- in this case, I'm looking for people with at least higher than a high school education background to understand the principles of DNA. That's my reason." J.S. 140. The trial court afforded defense counsel an opportunity to respond, to which she responded, "Mr. Caster is also a student in school and there a number of -- Mr. Dana, a number of people that indicated they were students. The fact that he's unemployed certainly is not a bar to his jury service here, and I submit that the two reasons given were  just a pretext to strike the lone African-American male from this jury." J.S. 141. The trial court denied counsel's <u>Batson</u> challenge, stating as follows: "Given the record of jury selection so far and I would find that a prima facie case has not been established, even assuming that a prima facie case of discrimination was established, I find the reasons offered by the prosecutor to be credible enough, and while there's no disqualification by reason of the facts alluded to by the assistant district attorney, they do not show anything other than a rational reason for exercising the challenge." J.S. 141.

During jury selection, Juror # 16, a female, related that her uncle and some members of her church were in law enforcement, but that she did not speak with them about their work.  In response to questioning by the court if she could assess a police officer's credibility using the same standards as she would any other witness, she stated "yes."  Upon further questioning, she indicated that she had witnessed her uncle stab her aunt when she was four years old.  J.S. 103-104.  When asked by the court if there was anything about that incident that would cause her to "favor one side or another," she answered in the negative, explaining that she believed her uncle had been treated fairly and that she would be able to put that particular incident "out of [her] mind."  J.S. 104-105.

The prosecutor exercised a peremptory strike to Juror # 16, and defense counsel lodged a <u>Batson</u> challenge.  In response to the prosecutor's peremptory strike, the court stated, "[w]ell, assuming, again, without deciding that a prima facie case has been established by the simple challenge, and the circumstances, I put you to your reason."  J.S. 143.  The prosecutor stated as follows: "First of all, I would just state[] I don't believe Miss Rivera is an African-American male.  However, my reasons for excusing her on a perempt challenge is that her uncle was accused of stabbing her aunt.  Based on those factors alone, I'm exercising the peremptory."  J.S. 143.  In response to the prosecutor's

explanation, defense counsel explained that "[n]umerous prospective members of the jury . . . had family members who were either accused of crimes or victims of crimes, and it didn't appear to matter in those instances, so I submit that that is not a race-controlled reason.  And again, this is just a pretext to remove Miss Rivera who apparently is an African-American from what I can see."  J.S. 144.  The trial court denied counsel's <u>Batson</u> application, stating as follows: "[t]he application is denied, prima facie case not having been established, number one, and number two, the reason proffered by the prosecutor meets sufficiently race neutral to negate any inference of discrimination."  J.S. 144.

After reviewing the record in light of the above-discussed precedent, this Court finds that the Fourth Department reasonably applied the Supreme Court's clearly established precedent in affirming Petitioner's conviction with respect to his <u>Batson</u> claim. <u>Batson</u>'s step one is not at issue here, since the Supreme Court has held that the prima facie case of discriminatory intent becomes irrelevant to the analysis of a peremptory challenge once the trial court proceeds to the second and third steps as it did in the present case.  <u>See</u> <u>Hernandez v. New York</u>, 500 U.S. 352, 359 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of

whether the defendant had made a prima facie showing becomes moot."); accord Jordan v. LeFevre, 206 F.3d 196, 200 (2d Cir. 2000) (stating that a trial judge may rule on a Batson application even in the absence of a prima facie showing of discrimination); Sorto v. Herbert, 364 F. Supp.2d 240, 252 (E.D.N.Y. 2004), aff'd, 497 F.3d 163 (2d Cir. 2007).

As required under Batson's step two, the trial court sought race-neutral reasons for the prosecutor's peremptory challenges to the two jurors in question. Although the prosecutor must present a comprehensible reason, [t]he second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem, 514 U.S. 765, 767-768 (1995) (per curiam) (quoted in Rice v. Collins, 546 U.S. 333, 338 (2006)). Here, the reasons proffered by the assistant district attorney were facially neutral and supported by the jurors' own statements in open court.

Turning to the third step of the Batson inquiry, a trial court's finding as to whether the prosecutor intentionally discriminated on the basis of race when exercising a peremptory strike is a factual finding entitled to appropriate deference by a reviewing court. Batson, 476 U.S. at 98 n. 21 (citation omitted); accord, e.g., Jordan v. Lefevre, 293 F.3d at 593. Since the trial judge's conclusions during the type of inquiry contemplated by Batson "largely will turn on evaluation of credibility," the

Supreme Court has instructed that reviewing courts "ordinarily should give those findings great deference." Id. (citing Anderson v. Bessemer City, 470 U.S. 564, 575-76 (1985)). Here, the Court finds no basis to disturb the trial court's findings. Petitioner attempts to rebut the finding of no racial discrimination with respect to Juror # 16 by pointing out that despite her exposure to familial violence as a child, she maintained that she would still be able to remain fair and impartial. See T.V. at 10-11. However, examining the record as a whole and the explanation for the prosecutor's challenge to Juror # 16, and extending the requisite deference to the trial court's determination of the prosecutor's credibility, the Court finds that Petitioner has not rebutted the presumption of correctness accorded the trial court's finding of non-pretext by clear and convincing evidence. Notably, Petitioner's contention falls short of this standard insomuch as his argument is premised upon a mis-characterization of Juror # 16's actual testimony, coupled with his subjective interpretation of what this mis-characterized testimony allegedly revealed about her emotional state. See T.V. at 10-11.

Similarly, with respect to Juror # 13, Petitioner attempts to rebut the finding of no racial discrimination by asserting that there was less than complete uniformity in application of the education factor to non-minority prospective jurors. In support of his contention, he asserts that two white caucasian jurors, who

were similarly situated to Juror # 13 in both age and educational background, were not challenged.  See T.V. at 10.  Indeed, "[t]he force of a prosecutor's explanation for challenging a minority member of a venire is obviously weakened substantially by evidence that non-minority members to whom the same explanation applies were not challenged."  United States v. Alvarado, 951 F.2d 22, 25 (2d Cir. 1991).  Petitioner, however, makes no showing that the two non-minority jurors were, in fact, similarly situated to Juror # 13 education-wise.  Rather, Petitioner provides this Court with a series of conclusory assertions that are based on speculation and are unsupported by the record evidence before this Court.  See T.V. at 10.  As such, the Court finds that Petitioner has not rebutted the presumption of correctness accorded the trial court's finding of non-pretext by clear and convincing evidence.

Accordingly, the state court's determination was not an unreasonable determination in light of the facts presented, and Petitioner's Batson claim is dismissed.

**5.   Defective Reasonable Doubt Jury Instruction**

Petitioner contends, as he did on direct appeal, that the use of the term "mathematical certainty" in the court's charge to the jury on reasonable doubt unconstitutionally lowered the People's burden of proof.  See Pet. at 11, Point Four; Pet. at 12, Point Five; T.V. at 17-21.  The Fourth Department rejected this claim, holding that "the prosecution's burden of establishing guilt beyond

a reasonable doubt . . . was clearly conveyed to the jury."
<u>Afrika</u>, 13 A.D.3d at 1222.[8]

The Supreme Court has noted that it is a "well established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." <u>Cupp v. Naughten</u>, 414 U.S. 141, 146-147 (1973); <u>accord, e.g.,</u> <u>Mason v. Schriver</u>, 14 F. Supp. 2d 321, 330 (S.D.N.Y. 1998) (Preska, D.J. & Peck, M.J.); <u>see also, e.g.,</u> <u>Cage v. Louisiana</u>, 498 U.S. 39, 41 (1990) ("In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole."); <u>United States v. Park</u>, 421 U.S. 658, 674 (1975) (quoting <u>Cupp</u>).

In <u>Victor v. Nebraska</u>, 511 U.S. 1 (1994), the Supreme Court noted that the beyond a reasonable doubt standard "is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." <u>Id.</u> at 6. Since "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof," the instructions must

---

[8]

Petitioner also claims that the trial court erred in its circumstantial evidence jury charge. <u>See</u> Pet. at 12, Point Four. Petitioner raised this claim on direct appeal, and the Fourth Department rejected it on a state procedural ground because he failed to properly preserve the issue for appellate review. <u>See</u> <u>Afrika</u>, 13 A.D.3d at 1222. Consequently, the claim is procedurally defaulted from habeas review by this Court. Petitioner does allege cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, the claim is dismissed as procedurally defaulted.

"correctly convey the concept of reasonable doubt" when "taken as a whole." Id.

Here, the trial court gave the following reasonable doubt instruction, which forms the basis for Petitioner's claim:

> What is a reasonable doubt? A reasonable doubt has been defined to be an uncertainty based on reason. In other words, it is a rational doubt or a doubt comfortable with sound sense and good judgments. A reasonable doubt is one for which you mus[t] able to assign reason for its existence in your mind. It is not a mere whim or speculation or conjecture. It can only be a reasonable doubt if it is one that reasonable men and women would entertain after a careful and honest review of the evidence. It must be founded on reason and it must survive the test of reasoning. A reasonable doubt is one that arises from the evidence or from the lack evidence in the case.
>
> Remember, Ladies and Gentlemen, that it is not the duty of the People in a criminal case to prove the guilt of a Defendant beyond all doubt or beyond all possible or imaginary doubt, nor is it the duty of the People to prove the guilt of the Defendant to a mathematical certainty because you cannot get such proof as that in human affairs.
>
> If in considering all of the evidence you can truthfully say that you do not entertain such a doubt, that is, a reasonable doubt as to the Defendant's guilt, then it is your duty to vote not guilty. But the converse of that is also true, and I charge it to you just as emphatically. As long as you are satisfied beyond a reasonable doubt of the Defendant's guilt you, would be justified and should find the Defendant guilty.

T.T. 384-385.

Petitioner objects to the "mathematical certainty" language of the jury instruction, arguing that such language unconstitutionally lowered the State's burden of proof by "equating legally sufficient

circumstantial evidence (the DNA results) with proof beyond a reasonable doubt." T.V. at 19. The Court rejects this contention and finds that the trial court's charge as read to the jury unquestionably conveyed a proper concept of the constitutionally requisite criminal standard of proof. It appropriately related to the jurors, *inter alia*, that a reasonable doubt is not a doubt "beyond all doubt or beyond all possible or imaginary doubt," and must be based on the evidence at trial or the lack thereof. T.T. 384-385.

Moreover, this Court is unaware of any caselaw in which the Supreme Court has found instructions unconstitutional that include language explaining that reasonable doubt does not require proof equivalent to "mathematical certainty." The caselaw Petitioner cites to in support of his claim (e.g., In re Winship, 397 U.S. 358 (1970); Victor v. Nebraska, 511 U.S. 1 (1994); Cage v. Louisiana, 498 U.S. 39, 41 (1990); Estelle v. McGuire, 503 U.S. 62 (1991)) has never found such either. Therefore, the Court cannot find that the state court's adjudication of Petitioner's claim contravened or unreasonably applied settled Supreme Court law.

Accordingly, this claim presents no basis for habeas relief and is therefore dismissed.

6. **Violation of Right to Indictment by Grand Jury/Convicted of Unindicted Crimes**

Petitioner argues, as he did on direct appeal, that he was convicted of two unindicted robberies because the proof at trial

established one attempted robbery (of a second outer-office safe) and three actual robberies occurred (of the two victims' wallets and of the Vix store), yet he was only charged with one robbery (of the Vix store) in the indictment.  See Pet. at 12, Point Two; T.V. at 13-17.  The Fourth Department rejected this claim on the merits, finding that "[d]efendant's theft of money from the store safe and from the wallets of the two victims was part and parcel of the continuous conduct that constituted one act of robbery."  Afrika, 13 A.D.3d at 1221-1222 (internal citations and quotations omitted).

To the extent that Petitioner is arguing that his right to a grand jury was violated, this argument does not state a federal constitutional claim cognizable on habeas review.  The law is well-settled that there is no federal constitutional right to indictment by a Grand Jury in a state criminal prosecution.  See Alexander v. Louisiana, 405 U.S. 625, 633 (1972);  see also LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (noting that the Fifth Amendment's right to a Grand Jury indictment had not been incorporated against the states through the Fourteenth Amendment).  Nevertheless, courts in this Circuit have held that a variance between accusatory allegations, such as an indictment, and proof at trial is cognizable on federal habeas review since it implicates double jeopardy and due process considerations.  See United States ex rel. Richards v. Bartlett, CV-92-2448, 1993 U.S. Dist. LEXIS 12743, at *13-14 (E.D.N.Y. Sept. 9, 1993);  see also Archie v. Strack, 378

F.Supp.2d 195, 199-200 (W.D.N.Y. 2005); <u>Chandler v. Moscicki</u>, 253 F.Supp.2d 478, 486-88 (W.D.N.Y. 2003). A variance in an indictment occurs when "the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." <u>United States v. Thomas</u>, 274 F.3d 655, 670 (2d Cir. 2001). To prevail on a variance claim, a defendant must demonstrate substantial prejudice. <u>Id.</u>

Here, there is no variance between the indictment and the proof offered at trial with respect to the robbery charge. In the indictment, Petitioner was charged with one count of robbery in the first degree and the proof at trial established that one act of robbery occurred. A review of the record reflects that the case was presented to the jury as a monetary theft from the Vix store safe. Notably, the record reflects that the prosecutor, on summation, enumerated Petitioner's actions during the course of the robbery of the Vix store as taping the hands of the two employees, forcing them to the ground, putting a gun to one man's head and taking "the money of the safe," without specifically mentioning the personal property of the two victims. T.T. 367. Likewise, the trial court instructed the jury that in order to find Petitioner guilty of robbery, it was required to find, beyond a reasonable doubt, that Petitioner "forcibly stole property from the Vix store." T.T. 397. Moreover, Petitioner cannot demonstrate any

prejudice since he was fully informed of the charges against him and was in no way misled by the evidence offered at trial.

Accordingly, the Appellate Division's rejection of this claim was neither contrary to nor an unreasonable application of clearly established Federal law. Petitioner's claim is therefore dismissed.

### 7. Trial Court Erred in Failing to Use Petitioner's Expert Witness Charge

Petitioner argues, as he did on direct appeal, that the trial court erred in failing to use his proposed charge in instructing the jury with respect to evaluating the credibility of expert witnesses. See Pet. at 12, Point Four. The Fourth Department did not review the claim because the proposed charge was not included in the record on appeal. See Afrika, 13 A.D.3d at 1222 (internal citations omitted). This is an adequate and independent state procedural ground which precludes this Court's review of Petitioner's claim. See Vaughn v. Giambruno, 03 Civ. 5403 (WHP) (THK), 2005 U.S. Dist. LEXIS 17465, at *12 (S.D.N.Y. July 12, 2005) ("The Appellate Division concluded that Petitioner failed to provide a record sufficient for review of his trial delay claim . . . and this is an adequate and independent state procedural ground which bars review of Petitioner's claim) (citing Bodie v. Edwards, No. 97 Civ. 7821, 2005 U.S. Dist. LEXIS 6714 (S.D.N.Y. Apr. 20, 2005); Cf. Panezo v. Portuondo, No. 02 Civ. 1522 (JBW), 2003 U.S. Dist. LEXIS 24372, (E.D.N.Y. Nov. 6, 2003) (Appellate Division's

holding that habeas petitioner's "right to be present at trial" claim was unreviewable because of an insufficient record on appeal procedurally barred federal habeas review).

Petitioner has not endeavored to make any showing of the requisite cause and prejudice to overcome the procedural default. Nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, the claim is dismissed as procedurally defaulted.

**8. Deprivation of Right to be Present at Material Stage of Trial**

Petitioner contends, as he did on direct appeal, that he was deprived of his right to be present at a material stage of his trial. In particular, he argues that: (1) he was absent when the court discussed the court's charge and a note from the jury; and (2) his statutory right to be present during supplementary jury instructions, which were given as a result of the note from the jury, was violated. See Pet. at 12, Point Four; T.V. at 27-28. With respect to the former portion of Petitioner's claim, the Fourth Department rejected this issue on the merits, finding that "[a]lthough the record indicates that defendant was absent when the court and the attorneys discussed the court's charge and a note from the jury, the defendant's presence was not required during those discussions because they involved only questions of law or procedure." Afrika, 13 A.D.3d at 1222. With respect to the latter portion of Petitioner's claim, the Fourth Department rejected this

claim on the merits, finding that Petitioner's "contention is based on the fact that the record does not indicate whether defendant had returned to the courtroom when the jury was brought in for [the] [supplementary] instructions. We conclude that defendant thereby failed to come forward with substantial evidence to rebut the presumption of regularity that attaches to all criminal proceedings." Id. at 1223 (internal citations and quotations omitted). This Court does not find the state court's determination of either of these issues to be contrary to or an unreasonable application of Supreme Court law.

### A.   Absence from Discussions Regarding Court's Charge and Note from Jury

It is well-settled that a criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422 U.S. 806, 819 n. 15 (1975). A criminal defendant's right to be present at all material stages of trial inheres in the confrontation clauses of the United States and New York Constitutions, and is articulated in both federal and state rules of procedure. See Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (citing U.S. Const. amend. VI; N.Y. Const. art. I, § 6; Fed. R. Crim. P. 43; CPL §§ 260.20, 340.50 (McKinney 1993, 1994)); see also Illinois, 397 U.S. at 338; People v. Parker, 57 N.Y.2d 136, 139 (1982); People v. Mullen, 44 N.Y.2d 1, 4-5 (1978).

However, the right to be present is not absolute. Cohen v. Senkowski, 290 F.3d 485, 489 (2d Cir. 2002). Rather, it arises only when the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Id. (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964)). In construing the scope of the right, the New York State Court of Appeals has held that "in the argument of a motion to decide a pure question of law, no right to be present inures to a defendant." People v. Anderson, 16 N.Y.2d 282, 288, 213 N.E.2d 445, 266 N.Y.S.2d 110 (1965). Similarly, federal law does not carve out any absolute right to be present during discussions of purely legal matters. See Fed. R. Crim. P. 43(c)(3) ("A defendant need not be present . . . when the proceeding involves only a conference or hearing upon a question of law."). Thus, the constitutional right to be present at trial applies only "to the extent that a fair and just hearing would be thwarted by [the defendant's] absence, and to that extent only." Snyder, 291 U.S. at 108.

Applying these principles to the instant case, Petitioner has failed to show that his ability to defend himself was in anyway compromised when the trial court and the attorneys discussed the court's charge and a note from the jury in Petitioner's absence. The portion of the trial at issue here involved a legal discussion

between counsel and the court. During this discussion, the trial court simply cited additional caselaw in further support of its earlier decision regarding its reasonable doubt instructions. This was followed by a brief legal discussion between the court and both attorneys on how to best respond to the jury's request to review certain defense exhibits and to answer the jury's inquiry as to whether the text on said exhibits was evidence. Petitioner could not have contributed anything meaningful to this legal discussion. Under these circumstances, where the benefit of Petitioner's presence would have been "but a shadow," Snyder, 291 U.S. at 106-07, his failure to be present did not in any way "frustrate the fairness of the proceedings." Faretta, 422 U.S. at 819 n. 15. Accordingly, the Court cannot find that the state court's adjudication of this issue contravened or unreasonably applied settled Supreme Court law.

### B. Alleged Absence from Court's Presentation of Supplementary Jury Instructions

At the outset, the Court notes that a district court may review an application for a writ of habeas corpus where there is a violation "of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a); Estelle, 502 U.S. 62, 68 (1991). Thus, to the extent that Petitioner claims that the trial court violated his statutory right to be present at a material stage of his trial when the supplementary jury instructions were

given, the Court may not review the merits of this claim on habeas review.

Petitioner's claim also does not invoke federal constitutional protections. The record before this Court does not reveal whether Petitioner was, in fact, present during the presentation of the court's supplementary jury instructions. The record shows the following: (1) in the presence of the court and counsel, the court stated, "I want to put something on the record"; (2) defense counsel then stated, "I want to, without the defendant"; (3) the court proceed to cite several cases "[i]n further support of its decision to charge on reasonable doubt," which was followed by a pause in the proceedings; (4) the court then asked the attorneys their respective proposals on how to respond to the note received from the jury concerning the defense's exhibits A and B and whether the text on said exhibits was evidence; (5) the jury was then brought in; and (6) the supplementary jury instruction was given, clarifying the legal parameters of the defense's exhibits A and B. T.T. 408-413. The court's supplementary jury instruction was as follows:

> We have your notes which we marked as Court Exhibit number 3 requesting to have Defense A and Defense B for review and asking whether the text on those documents are evidence. The short answer to your question is Defense Exhibits A and B are not in evidence. They were not received in evidence and there are legal reasons for that . . . . You must consider the testimony of the witnesses who were examined with respect to those exhibits.

> That is the evidence you can consider. So you
> won't be able to have Defense Exhibits A and B
> for your review.

T.T. 412. On the basis of these excerpts, Petitioner insists that he was absent because there is no indication in the transcript that he was present in the courtroom before the jury was returned and the supplementary jury instruction was given in response to the jury's note.

Even assuming Petitioner's absence, however, the claim is not a basis for relief because Petitioner has not established that he was deprived of a constitutional right. As discussed above, although a criminal defendant has the right to be "present at all stages of the trial where his absence might frustrate the fairness of the proceedings," Faretta, 422 U.S. at 820 n. 15 (internal citation omitted), that right is not absolute. Rather, an accused has the right to be present only to the extent that his "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder, 291 U.S. at 105-06, overruled on other grounds, Malloy v. Hogan, 378 U.S. 1 (1964); cf. Clark v. Stinson, 214 F.3d 315, 323 (2d Cir. 2000) (defendant's absence is "reversible error" only when Snyder standard met), cert. denied, 531 U.S. 1116 (2001).

Under these standards, Petitioner's presence during the supplementary jury instruction was not constitutionally required, for it cannot be said that the "fullness of his opportunity to

defend" was substantially lessened by his brief (and only assumed) absence. Here, the court's response to the jury's note was solely of a legal nature and was meant only for legal clarification purposes. The court's instruction did not require any further "defending" and Petitioner's counsel was present during the court's instruction. Under these circumstances, the court's supplementary jury instruction cannot be considered a material stage of the trial.

In any event, even if Petitioner were deprived of a constitutional right to be present at a material stage of his trial, issuance of the writ is not warranted because, in light of the overwhelming evidence of Petitioner's guilt, any such error would have been harmless. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (in order to be entitled to habeas relief, petitioner must demonstrate that any constitutional error "had substantial and injurious effect or influence in determining the jury's verdict" and that the error resulted in "actual prejudice"); Rushen v. Spain, 464 U.S. 114, 119 n. 2 (1983) ("violations of the right to be present during all critical stages of the proceedings . . . are subject to harmless error analysis"). Accordingly, the Court cannot find that the state court's adjudication of this claim contravened or unreasonably applied settled Supreme Court law.

Petitioner's claim provides no basis for habeas relief and is therefore dismissed in its entirety.

**9. Trial Court Abused its Discretion in Admitting Photographic Evidence**

Petitioner argues, as he did on direct appeal, that the trial court abused its discretion in admitting photographic evidence of the victim depicting his injury.  He argues that the admission of this evidence was unduly prejudicial.  See Pet. at 12, Point Six; T.V. at 23-27.  The Fourth Department rejected this claim on the merits.  See Afrika, 13 A.D.3d at 1223.

At the outset, the Court notes that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle, 502 U.S. at 67-68; accord Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001).  "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates the fundamental conceptions of justice."  Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998).  Thus, even where the state court ruling was erroneous, habeas relief is not available unless the error resulted in a trial that "deprive[d] the defendant of fundamental fairness," thereby violating due process rights guaranteed by the federal constitution.  Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1998).

It is well-established law in New York that the balancing of probative value against potential prejudice is entrusted to the trial court's discretion. People v. Gillyard, 13 N.Y.3d 351, 892 N.Y.S.2d 288 (2009) (citing People v. Ventimiglia, 52 N.Y.2d 350, 359-360 (1981).  In New York, "[p]hotographs are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered." People v. Wood, 79 N.Y.2d 958, 960 (1992) (citations omitted). "Photographic evidence should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant." People v. Pobliner, 32 N.Y.2d at 370; see also Koberstein, 262 A.D.2d at 1033.  Here, forcible compulsion was an element of the charge of first degree sodomy. See Penal Law § 130.50 [1].  The People were therefore required to prove that Petitioner used force against Ranney.  Photographs of injuries resulting from use of force are admissible to assist in doing so. See People v. Harrington, 108 A.D.2d 1062, 1063 (3d Dep't 1985); see also People v. Pope, 253 A.D.2d 443 (2nd Dep't 1998).  The photograph depicting the victim's injury was relevant and probative of the issue of force.  The photograph confirmed Ranney's testimony that his injury resulted in soreness, as well as that of the treating physician, Dr. Greenwald, who testified that there was an "obvious contusion" and tenderness when he palpitated the victim's

anus. T.T. 102. The trial court, therefore, did not err in exercising that discretion, and thus did not violate a state evidentiary rule. The Fourth Department found the same. Consequently, there was no error of constitutional magnitude. Rodriquez v. Superintendent, Collins Corr. Facility, 549 F.Supp.2d 226, 244-45 (N.D.N.Y. 2008); see also Rojas v. Senkowski, No. CV-95-1866, 1996 U.S. Dist. LEXIS 20216, at *14 (E.D.N.Y. July 29, 1996) ("The [state] trial court was entirely justified in finding that the probative value [of the evidence] outweighed any prejudice, and the decision was well within the judge's discretion. Thus there was no error of constitutional magnitude in the trial court's ruling that would warrant granting petitioner's habeas corpus petition on this ground.") (citation omitted).

Accordingly, this claim does not provide a basis for habeas relief, and is dismissed.

**10. Ineffective Assistance of Trial Counsel**

Petitioner argues, as he did in his first CPL § 440.10 motion, that he received ineffective assistance of trial counsel based on counsel's failure to: (1) object to the admission at trial of DNA comparison evidence; and (2) object to the admission of photographic evidence of the victim's injuries. See Pet. at 13, Second Point One. The Monroe County Supreme Court denied this claim on procedural grounds pursuant to CPL § 440.10(2)(b) because the claim was a matter of record that could be advanced in

Petitioner's direct appeal.  <u>See</u> Resp't App. E.  Petitioner, however, failed to raise the issue on direct appeal. Consequently, the claim is procedurally barred by an adequate and independent state ground.

As discussed above, a federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, whether substantive or procedural, that is independent of the federal question and adequate to support the judgment. <u>See</u> <u>Coleman</u>, 501 U.S. at 729. Here, Petitioner's claim was denied on the basis of CPL § 440.10(2)(b), which bars claims that are appealable, pending appeal, or reviewable based on the record.  With respect to Petitioner's ineffective assistance of trial counsel claim based on counsel's failure to challenge the admission of DNA comparison evidence, the Monroe County Supreme Court explicitly held that "all matters complained of by the defendant are matters of record, which may be advanced in defendant's pending appeal." <u>See</u> Resp't App E at 3.[9]  Similarly, with respect to Petitioner's ineffective assistance of counsel claim based on counsel's failure to challenge the admission of photographic evidence of the victim's injuries, the Monroe County Court found that "these issues are matters of record, and the requested relief must be denied." <u>Id.</u> Petitioner

_____

[9]

The Monroe County Supreme Court also rejected this claim, alternatively, on the merits.

failed to subsequently raise an ineffective assistance of trial counsel claim on direct appeal. The Monroe County Supreme Court's holding is a clear and plain statement relying on a state procedural rule. The state court's reliance on CPL § 440.10(2)(b) to reject this claim constitutes an independent and adequate state procedural ground. See e.g., Hemphill v. Senkowski, 02 Civ. 7093 (DC), 2004 U.S. Dist. LEXIS 7617, *12 (S.D.N.Y. May 3, 2004); Perez v. Hollins, 02 Civ. 6120 (GBD) (JCF), 2004 U.S. Dist. LEXIS 2310, *10 (S.D.N.Y. Feb. 5, 2004); Powell v. Miller, 98-CV-6286 (CJS), 2001 U.S. Dist. LEXIS 21129, *30 (W.D.N.Y. Nov. 5, 2001). That the court also looked to the merits of the ineffective assistance of trial counsel claim based on counsel's failure to challenge the admission of the DNA comparison evidence does not undermine the procedural bar. See Harris, 489 U.S. at 264 n.10. Accordingly, the state court's reliance on an independent and adequate state procedural ground to reject Petitioner's ineffective assistance of trial counsel claim precludes this Court's review of it.

To overcome the procedural bar, Petitioner would need to show both cause for not raising the claim in state court and prejudice resulting from the error, or that a "fundamental miscarriage of justice" would result if the claim were not addressed. See Coleman, 501 U.S. at 750; Dixon v. Miller, 293 F.3d 74, 80-81 (2d

Cir. 2002). Petitioner has not attempted to make a showing of either. Thus, the claim is dismissed as procedurally defaulted.

## 11. Cumulative Effect of Constitutional Error

Petitioner contends that the cumulative effect of the following constitutional errors deprived him of his right to a fair trial: (1) the trial court's legal definition of circumstantial evidence lessened the State's burden of proof and shifted the burden of proof; (2) that Petitioner's "proposed jury instructions should have been given where the one given was wholly inadequate and deficient"; and (3) that he was absent during a material stage of his trial. See Pet. at 12, Point Four; T.V. at 21-22.

As discussed above, each of the individual errors Petitioner cites are either meritless or procedurally barred from review by this Court. Accordingly, his claim that cumulative error deprived him of his right to a fair trial provides no basis for habeas relief and is dismissed.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also

hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     February 9, 2011
           Rochester, New York